**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**CYRUS RODELL CRANFORD,**

      **Plaintiff,**

v.                                                   3:07cv203/MCR/MD

**HAROLD R. MCNESBY, Sheriff of
Escambia County, Florida; LARRY
SMITH, Chief Deputy of the Escambia
County Sheriff's Office; JOHN DOE(S),
yet to be identified supervisor and officers
of the Escambia County, Florida Sheriff's
Office,**

      **Defendants.**
_____/

**O R D E R**

This case arises from plaintiff's resignation from his position as a deputy sheriff with the Escambia County Sheriff's Office ("ECSO"). Plaintiff filed a four-count complaint in the Circuit Court of Escambia County, Florida, seeking damages for violation of his Fourteenth Amendment procedural due process and equal protection rights (Count I); duress (Count II); fraudulent misrepresentation (Count III); and breach of contract (Count IV). (Doc. 1-2).[1] Defendants removed the case to this court. (Doc. 1). Pending before the court is defendants' motion for summary judgment (doc. 31), to which plaintiff has responded (doc. 33).[2] For the following reasons, defendants' motion for summary judgment is GRANTED.

---

[1] Defendants are sued in both their individual and official capacities.

[2] Pursuant to the court's order of February 15, 2008 (doc. 41), in considering defendants' motion for summary judgment, the court has also taken into account the arguments presented in defendants' motion to dismiss (doc. 11) and plaintiff's response (doc. 12).

**Background[3]**

⎯⎯⎯⎯⎯Plaintiff Cyrus Cranford ("Cranford") was hired by the ECSO as a deputy sheriff in December 1983.  In 2002, Cranford was serving as senior officer and investigator in the Crimes Against Children, Sexual Abuse, and Rape Unit.  In 2002, Defendant Harold R. McNesby ("McNesby") was the Sheriff of Escambia County and Defendant Larry Smith ("Smith") was the Chief Deputy of the ECSO.

In April 2002, a temporary injunction was issued directing Cranford to have no further contact with Lisa Whitsett, Cranford's former fiancé.  Cranford informed his superiors, including Smith, of the injunction.  Cranford was allowed to continue working while under the injunction and no disciplinary action was taken at that time.  A permanent injunction was issued later that month, again with no effect on Cranford's employment.

After the issuance of the permanent injunction, Whitsett complained to the Santa Rosa County Sheriff's Office ("SRCSO") that Cranford continued to contact her and in one case had stalked her while in his police car.[4]  Based on these complaints, the SRCSO initiated a criminal investigation into Cranford's alleged violations of the permanent injunction in November 2002.  During the course of this investigation, Cranford was assured by his superiors that the investigation would not result in any negative employment action.  Cranford did however receive a direct order from one of his superiors to have no further contact with Whitsett.  The SRCSO's investigation culminated in Cranford's arrest on February 20, 2003, on ten misdemeanor charges and one felony charge related to his alleged violations of the permanent injunction ("the Santa Rosa County case").  The following day the ECSO placed Cranford on administrative leave with pay.  On March 31, 2003, Smith rescinded the administrative leave order, allowing Cranford to return to work the following day.

---

[3] As this case comes before the court on defendant's motion for summary judgment, the court views the following facts in the light most favorable to the plaintiff as the non-moving party. See Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993). The court therefore does so here, drawing those facts from the pleadings, depositions, and other evidentiary materials on file. Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. See Montount v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).

[4] Whitsett resided in Santa Rosa County and the injunctions had been issued by a court in that county.

In July 2003, the state attorney's office offered Cranford a plea bargain. Cranford initially was not interested in accepting the plea bargain because he claimed he was innocent of the charges and wanted to take the case to trial. On July 29, 2003, however, Cranford met with Smith who informed him that McNesby was experiencing a great deal of political pressure because of Cranford's case.[5] Smith indicated that it would be in Cranford's best interest to accept the plea bargain and serve any probation the court imposes. Smith further stated that Cranford would be transferred to the ECSO's auto theft unit during his probation and would then be returned to his normal position. Cranford received similar assurances from two other deputies who also encouraged Cranford to accept the plea bargain.

On July 30, 2003, Cranford, represented by counsel, pled guilty to five misdemeanor counts of violating the permanent injunction.[6] As conditions of his plea, the court withheld its adjudication of guilt and placed Cranford on two years probation. Under the terms of the plea bargain, Cranford was allowed to continue working as a deputy sheriff and possess a firearm. Cranford provided Smith with a copy of his plea agreement. The day after Cranford entered his guilty plea, he began working in the ECSO's auto theft unit. The following week, however, Cranford again met with Smith, who informed him that the political pressure on McNesby had not alleviated and that Cranford would have to find a new job. Later that day, Cranford was given a notice informing him that a pre-determination conference was scheduled for the following day. This notice also informed Cranford of certain agency policies which he had allegedly violated.[7]

The next day, August 5, 2003, Cranford met with Smith for his pre-determination conference. At this meeting, Cranford was represented by attorney Darlene Dickey and

---

[5] At the time, McNesby was running for re-election as sheriff of Escambia County.

[6] The remaining five misdemeanor counts and the felony stalking charge were dismissed.

[7] The notice stated that Cranford had allegedly violated General Order 03-22 - Standards of Conduct. Specifically, Cranford was alleged to have committed a Neglect of Duty Offense ("Failure to Follow General Orders, Directives and Sheriff's Orders"); several Improper Conduct Offenses ("Misdirected Action of Member under Investigation," "Violating Laws Relating to Office of Sheriff," and "Conduct Unbecoming a Member of the Sheriff's Office"); and an Insubordination Offense ("Compliance with Direct Order of a Superior").

a representative from the Police Benevolent Association ("PBA").  During this meeting, Smith refused to allow Cranford to present evidence establishing his innocence or to grant Dickey a continuance in order to better prepare her case.  Instead Smith informed Cranford that he could either resign, in which case the ECSO would not seek to revoke Cranford's police standards; or be fired, in which case the ECSO would seek to revoke Cranford's police standards.  Cranford met with Dickey outside of Smith's presence and then returned to the meeting and signed the resignation letter.[8]

On August 25, 2003, the ECSO reported Cranford's resignation and guilty plea to the Florida Department of Law Enforcement ("FDLE") and provided them with the office's investigative findings and supporting documentation, as required by state law and the FDLE's administrative rules.  Based on this information, the FDLE filed an administrative complaint with the Florida Criminal Justice Standards and Training Commission ("standards commission") in which the FDLE charged that Cranford "did unlawfully, after a court imposed prohibition of conduct toward the person or property of Lisa Whitsett, to wit: an Injunction for Protection Against Domestic Violence Without Minor Children, knowingly, willfully, maliciously, and repeatedly follow or harass said person."  The FDLE recommended that Cranford serve a two-year prospective suspension followed by a two-year probationary period, and that he perform a psychological fitness for duty evaluation and complete any treatment or counseling recommended pursuant to that evaluation.

On April 12, 2005, Cranford submitted a formal hearing request to Escambia County's Civil Service Board ("CSB") seeking reinstatement and back pay.  Initially the CSB voted to hear Cranford's appeal.  After the ECSO filed a motion to reconsider, arguing that Cranford's appeal was untimely, however, the CSB declined to hear the appeal.

On August 4, 2005, the standards commission held a hearing on the FDLE's administrative complaint against Cranford.  At this hearing, a representative of the ECSO recommended that Cranford's standards be revoked.  On August 9, 2005, the standards commission issued an order finding that the facts as alleged in the administrative complaint

---

[8] Cranford's resignation letter stated that he was resigning for "personal reasons".

Case No.: 3:07cv203/MCR/MD

were supported by competent, substantial evidence. Based on these facts, the commission found that disciplinary action was appropriate, but that Cranford's police standards should not be revoked. The commission placed Cranford on probation for one year and required that he successfully complete a psychological fitness for duty evaluation and a commission-approved ethics course. Cranford was also directed to complete any course of treatment or counseling recommended during his psychological evaluation.

**Summary Judgment Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "The mere existence of *some* alleged factual dispute between the parties," however, "will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) (emphasis in original). A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A fact is "material" if it may affect the outcome of the case under the applicable substantive law. See id.

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on the mere allegations or denials of the moving party's pleadings. Instead, the nonmoving party must respond by affidavits or otherwise and present specific allegations showing that there is a genuine issue of disputed fact for trial. Fed. R. Civ. P. 56(e). When assessing the sufficiency of the evidence, the court must view all the evidence, and all factual inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party. See Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993). A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a genuine issue of material fact and thereby preclude summary judgment. See Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the adverse party fails to show a genuine

issue of material fact, summary judgment, if appropriate, may be entered against the nonmoving party.

**Discussion**

**1. Fourteenth Amendment**

Defendants claim they are entitled to qualified immunity on Cranford's Fourteenth Amendment procedural due process and equal protection claims, brought under 28 U.S.C. § 1983.

A government official who is sued under § 1983 may seek summary judgment on the ground that he is entitled to qualified immunity. See Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1263 (11th Cir. 2004). It is well settled that "[q]ualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

To be eligible for qualified immunity, the official must first establish that he was performing a "discretionary function" at the time the alleged violation of federal law occurred. See Crosby v. Monroe County, 394 F.3d 1328, 1331 (11th Cir. 2004) (citing Holloman, 370 F.3d at 1263-64). Once the official has established that he was engaged in a discretionary function, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity. See Holloman, 370 F.3d at 1264. The Supreme Court has set forth a two-part test for the qualified immunity analysis. "The threshold inquiry a court must undertake . . . is whether [the] plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. "If a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was

clearly established.'" Vinyard, 311 F.3d at 1346 (quoting Saucier, 533 U.S. at 201).

In this case, defendants were performing a "discretionary function" of their positions when they allegedly violated Cranford's constitutional rights, i.e. disciplining and discontinuing the employment of a deputy sheriff. See Sims v. Metropolitan Dade County, 972 F.2d 1230, 1236 (11th Cir. 1992). The burden therefore shifts to Cranford to show a violation of his constitutional rights. See Hope, 536 U.S. at 736 (citing Saucier, 533 U.S. at 201).

### A.  Count One - Procedural Due Process

Cranford alleges that he was deprived of his right to procedural due process when Smith refused to allow him to present evidence in support of his innocence at the pre-determination hearing, as is required by the United States Supreme Court's holding in Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

The guarantee of procedural due process is "meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Arrington v. Helms, 438 F.3d 1336, 1347 (11th Cir. 2006) (internal quotation marks omitted) (quoting Carey v. Piphus, 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978)). In order to state a § 1983 procedural due process claim a plaintiff must allege: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." Id. (internal quotation marks omitted) (quoting Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir.2003)). A procedural due process violation is not complete, however, "unless and until the State fails to provide due process." McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994) (internal quotation marks omitted) (citing Zinermon v. Burch, 494 U.S. 113, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990)); see also Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000) ("It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim."). Therefore, in determining whether a plaintiff has stated a valid procedural due process claim, the court must assess "whether the available state procedures were

adequate to correct the alleged procedural deficiencies." Cotton, 216 F.3d at 1331 (citations omitted); see also McKinney, 20 F.3d at 1557 ("[O]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise.").

In this case, Cranford has not shown that Escambia County failed to provide constitutionally adequate procedures or that there was no state court recourse available to correct the defendants' actions. "[T]he state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora-agencies, review boards, and state courts, before being subject to a claim alleging a procedural due process violation." Mickens v. Tenth Judicial Circuit, 181 Fed.Appx. 865, 877 (11th Cir. 2006) (quoting Horton v. Board of County Comm'rs of Flagler County, 202 F.3d 1297 (11th Cir. 2000) (internal quotation marks omitted)). Under Escambia County's Civil Service Act ("CSA"), Cranford was entitled to appeal his allegedly coerced resignation to the county's CSB. See Chapter 83-405 § 8.2, Laws of Florida. Cranford in fact utilized this appeals process and the CSB only declined to hear Cranford's appeal because it was untimely. Further, under the CSA, Cranford had the right to challenge any unfavorable ruling by the CSB through a petition for writ of certiori to the Circuit Court of Escambia County, Florida. See Chapter 83-405 § 14, Laws of Florida. "[C]ertiori is generally an adequate state remedy." Cotton, 216 F.3d at 1331 (citing Narey v. Dean, 32 F.3d 1521, 1527 (11th Cir. 1994), Bell v. City of Demopolis, Alabama, 86 F.3d 191, 192 (11th Cir. 1996), McKinney, 20 F.3d at 1563). Therefore, even if Cranford's pre-determination conference did not satisfy the requirements in Loudermill, Cranford cannot establish a violation of his procedural due process rights because an adequate post-deprivation process existed to remedy the ECSO's failure to follow proper procedures. See Hicks v. Jackson County Comm'n, 374 F.Supp.2d 1084, 1090-91 (N.D.Ala. 2005) (finding no procedural due process violation even where no pre-deprivation hearing is held so long as adequate post-deprivation remedies exist). Because Cranford has failed to show a violation of his due process rights, defendants, in their individual capacities, are entitled to qualified immunity on Cranford's procedural due process claim.

### B. Count One - Equal Protection

Cranford also alleges that McNesby and Smith treated him differently than other officers who have been involved in or charged with domestic violence incidents. Cranford alleges that while he was forced to resign or be fired due to the minor charges against him, the ECSO has employed or continued to employ officers who have faced much more serious accusations. Cranford, however, has not asserted that this differential treatment was caused by his membership in any suspect class. Cranford's claim must therefore be based on a "class-of-one" theory of equal protection as described in Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam). The Supreme Court, however, has recently held that the "class-of-one" theory of equal protection has no application in the public employment context. See Engquist v. Oregon Dept. of Agriculture, ___ S.Ct. ___, 2008 WL 2329768 *9, No. 07-474 at 12-13 (June 9, 2008). In Engquist, the Court noted that allowing such claims would "impermissibly constitutionalize the employee grievance." Id. at *12, No. 07-474 at 16 (quoting Connick v. Myers, 461 U.S. 138, 154, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (internal quotation marks omitted)). Having failed to allege membership in any suspect class, Cranford's equal protection claim must fail. Because Cranford has failed to show a violation of his equal protection rights, defendants, in their individual capacities, are entitled to qualified immunity on Cranford's equal protection claim.[9]

### 2. State Law Claims

Counts Two, Three, and Four involve state law claims sounding in tort and contract. With no federal claims remaining, the court has the option of dismissing or remanding the state law claims or retaining supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367, if retaining jurisdiction would be in the interests of judicial economy, convenience, fairness, and comity. See 28 U.S.C. § 1367; City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 173, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) ("[W]hen deciding whether to

---

[9] It is not clear whether Cranford's procedural due process and equal protection claims are also asserted against defendants in their official capacities. Regardless, Cranford's failure to show a violation of his constitutional rights also entitles defendants, in their official capacities, to summary judgment on these claims. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Case No: 3:07cv203/MCR/MD

exercise supplemental jurisdiction, a federal court should consider and weigh, in each case, at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.") (internal quotation marks omitted); <u>Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Florida</u>, 402 F.3d 1092, 1123 (11th Cir. 2005) (explaining that where a district court declines to exercise supplemental jurisdiction over state law claims following removal and dismissal of federal claims, the proper course is remand rather than dismissal of the state law claims).  This case has been pending in this court for a substantial time and the trial date is close at hand.  Dismissing or remanding these remaining claims at this time would cause unnecessary delay and prejudice to the parties.  Based on these considerations, the court will continue to exercise supplemental jurisdiction over Cranford's remaining state law claims.

### *A. Count Two - Duress*

In Count Two of his complaint, Cranford alleges that his resignation on August 5, 2003, was the product of duress, caused by Smith's improper threat to seek to have his police standards revoked if Cranford did not resign.

An employee's resignation is presumed to be a voluntary act.  <u>McLaughlin v. Dep't of Natural Res.</u>, 526 So.2d 934, 936 (Fla. 1st DCA 1988) (citing <u>Covington v. Dep't of Health and Human Servs.</u>, 750 F.2d 937, 941 (Fed.Cir. 1984)).  A resignation under duress, however, is not a voluntary act.  <u>Id.</u> (citing <u>City of Miami v. Kory</u>, 394 So.2d 494 (Fla. 3d DCA 1981)).  Duress "is a condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition." <u>Williams v. Williams</u>, 939 So.2d 1154, 1157 (Fla. 2d DCA 2006) (quoting <u>Herald v. Hardin</u>, 95 Fla. 889, 116 So. 863, 864 (1928) (internal quotation marks omitted)).  In order to prevail on a claim of duress, a plaintiff must show: "(1) that one side involuntarily accepted the terms of another, (2) that circumstances permitted no other alternative, and (3) that said circumstances were the result of coercive acts of the opposite party."  <u>McLaughlin</u>, 526 So.2d at 936 (citations omitted).  To establish duress, a plaintiff may not rely on his own subjective evaluation of the situation, but rather must "tender objective evidence that the . . . resignation was the

product of duress." Id. (citations omitted).

In this case, even assuming Cranford has sufficiently satisfied the first and third elements, he has not shown that the circumstances surrounding his resignation permitted no other alternative to resigning. Cranford had the option of being terminated and then challenging his termination before the CSB and, if necessary, before the Circuit Court of Escambia County by petitioning for a writ of certiori. See Chapter 83-405 §§ 8.2, 14, Laws of Florida. Cranford had either actual or constructive knowledge of this option and could have consulted with his counsel or the PBA representative about choosing this alternative. See Venero v. City of Tampa, Florida, 830 F.Supp. 1457, 1459-60 (M.D.Fla. 1993) ("The employee can . . . be held to have a constructive knowledge of agency rules and policies."). Because Cranford had an option other than resignation, his decision to resign cannot be the product of duress. See Kory, 394 So.2d at 499 ("[T]hreatened action cannot constitute duress, when there are adequate legal remedies available with which to challenge it."); Peralta v. Peralta Food, Corp., 506 F.Supp.2d 1274, 1282 (S.D.Fla. 2007) (quoting Kory); see also Christie v. United States, 207 Ct.Cl. 333, 518 F.2d 584, 587 (1975) ("[P]laintiff chose to resign and accept discontinued service retirement rather than challenge the validity of her proposed discharge for cause. The fact remains, plaintiff had a choice. She could stand pat and fight. She chose not to."); Venero, 830 F.Supp. at 1459 ("Plaintiff's claim of involuntary resignation due to the option given to him between dismissal and resignation fails to entitle him to relief."). Defendants' motion for summary judgment on Cranford's claim of duress therefore is due to be granted.[10]

### B. Count Three - Fraudulent Misrepresentation

In Count Three of his complaint, Cranford alleges that during his pre-determination conference with Smith, Smith knowingly made a false statement of material fact, i.e. that if Cranford resigned in lieu of being terminated the ECSO would not seek to revoke his police standards. Cranford alleges that this was a false statement because Smith intended

---

[10] In opposition to defendants' motion for summary, Cranford relies primarily on the holding in Mullan v. Bishop of the Diocese of Orlando, 540 So.2d 174 (Fla. 5th DCA 1989). While the court agrees that the facts in Mullan are similar to those involved here, the court in that case did not address whether there were adequate legal remedies available to the plaintiff had he chosen to be terminated rather than resign.

Case No: 3:07cv203/MCR/MD

to seek the revocation of Cranford's standards regardless of whether Cranford resigned or was terminated.[11]

A claim of fraudulent misrepresentation under Florida law contains the following elements: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation." Webb v. Kirkland, 899 So.2d 344, 346 (Fla. 2d DCA 2005) (quoting Johnson v. Davis, 480 So.2d 625, 627 (Fla. 1985) (internal quotation marks omitted)).

In this case, Cranford cannot satisfy the fourth element because he cannot show an injury as a result of his reliance on Smith's alleged misrepresentation. The standards commission ultimately found that Cranford's standards should not be revoked. Smith's alleged misrepresentation thus had no negative impact on Cranford's retention of his police standards. Defendants' motion for summary judgment on Cranford's fraudulent misrepresentation claim therefore is due to be granted.[12]

### C. Count Four - Breach of Contract

In Count Four of his complaint, Cranford alleges that a valid and enforceable contract existed between him and the defendants in which Cranford promised to plead guilty to the charges in the Santa Rosa County case in return for the promise that he would continue to be employed by the ECSO in the auto theft unit until he completed his probationary period. Cranford alleges that defendants breached this contract when they forced him to resign under duress.

Under Florida law, the elements of a breach of contract action are: (1) a valid contract; (2) a material breach of that contract; and (3) damages. Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A., 938 So.2d 571, 575 (Fla. 4th DCA 2006) (quoting Abbott Labs.,

---

[11] In response to defendants' motion for summary judgment Cranford has asserted that defendants' fraudulent misrepresentation actually was that Cranford would continue to be employed by the ECSO if he pled guilty. This is not the allegation in the complaint and cannot now be asserted to defeat summary judgment.

[12] Because the court finds that defendants are entitled to summary judgment on counts two and three in both their individual and official capacities, the court need not address whether defendants, in their official capacities, are also entitled to sovereign immunity on these claims.

Case No: 3:07cv203/MCR/MD

Inc. v. Gen. Elec. Capital, 765 So.2d 737, 740 (Fla. 5th DCA 2000)).

In Florida, sheriffs are constitutional officers whose powers are limited by statute. See art. II, § 5(c), Fla. Const. ("The powers [and] duties ... of state and county officers shall be fixed by law."). Chapter 30, Florida Statutes describes the various powers, duties, and obligations of sheriffs in Florida. Under that chapter, a sheriff is authorized to appoint deputies, for whose acts he is responsible, to act in his stead. See Fla. Stat. § 30.07 (2002). Sheriffs, however, are not empowered under that chapter to enter into employment contracts with their deputies.[13] See Stough v. Gallagher, 967 F.2d 1523, 1530 (11th Cir. 1992) (quoting Murphy v. Mack, 358 So.2d 822, 825 (Fla. 1978)) ("[A deputy sheriff] holds an appointment, as distinguished from an employment."). Because deputy sheriffs are appointees, rather than employees, sheriffs in Florida have absolute control over their selection and retention. See id. (citing Tanner v. McCall, 625 F.2d 1183, 1186 (5th Cir. 1980)); see also Fla. Stat. § 30.53 ("[T]he independence of the sheriffs shall be preserved concerning the purchase of supplies and equipment, selection of personnel, and the hiring, firing, and setting of salaries of such personnel . . . ."). Deputy sheriffs therefore serve at the sheriff's pleasure and are terminable at will. See McRae v. Taylor Douglas, 644 So.2d 1368, 1373 (Fla. 5th DCA 1994). The only exception to this general principle is a legislatively created career civil service system providing deputy sheriffs with contractual rights or a protected interest in their employment. See Capsalis v. Worch, 902 F.Supp. 227, 231 (M.D.Fla.1995) (citing McRae, 644 So.2d at 1373); see also Stough, 967 F.2d at 1530 (quoting Murphy, 358 So.2d at 825) ("The office of under or deputy sheriff is a common-law office; and this is the rule unless a change is effected by the constitution or statute law of the state."). Deputy sheriffs' remedies under such a statute, however, are limited to those provided by the statute. See Johnson v. Beary, 665 So.2d 334, 336 (Fla. 5th DCA 1995) (citing Brevard County v. Miller, 452 So.2d 1104 (Fla. 5th DCA 1984)).

---

[13] Chapter 30 expressly authorizes sheriffs, however, to enter into certain, specific types of contracts, including employment contracts with off-duty deputies for security services. See, e.g., Fla. Stat.§ 30.24 ("The sheriff of each county of the state is authorized to contract with private transport companies for the transportation of prisoners both within and beyond the limits of this state."), § 30.2905 ("Program to contract for employment of off-duty deputies for security services.")

Case No: 3:07cv203/MCR/MD

In this case, Cranford, as a deputy sheriff, held his office by appointment and McNesby, as sheriff, had "absolute control" over Cranford's retention. Under Chapter 30, Florida Statutes, although McNesby was empowered to appoint Cranford as a deputy sheriff, he could not bestow on him any contractual rights. Thus Smith's promise to transfer Cranford to the ECSO's auto theft unit if Cranford pled guilty had no impact on Cranford's status as an at will appointee or on McNesby's authority to terminate his employment. Cranford, however, did have a protected interest in his appointment by virtue of Escambia County's CSA. Cranford's remedies under the CSA, however, were limited to appealing to the CSB and, if necessary, seeking a writ of certiori in the Circuit Court of Escambia County. Cranford has failed to timely pursue these remedies and consequently he is barred from now seeking to enforce his rights under the CSA. Defendants' motion for summary judgment is likewise due to be granted on Cranford's breach of contract claim.

Accordingly, it is hereby ordered:

1. Defendants' motion for summary judgment (doc. 31) is GRANTED; and
2. Final judgment is entered in favor of defendants, with taxable costs assessed against plaintiff. Plaintiff shall take nothing by this action. The Clerk of Court is directed to CLOSE this case.

DONE AND ORDERED on this 23rd day of June 2008.

        s/ *M. Casey Rodgers*
        **M. CASEY RODGERS**
        **UNITED STATES DISTRICT JUDGE**